IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JIM FERGUSON,

        Plaintiff,                 No.  2:06-cv-1301 MCE CKD P

   vs.

C. HALL,

        Defendant.         <u>ORDER AND FINDINGS AND</u>

                                               <u>RECOMMENDATIONS</u>

_____/

        Plaintiff, a former inmate of the State of California, proceeds pro se with a first amended civil rights complaint filed pursuant to 41 U.S.C. § 1983 (Dkt. No. 16). Defendant has moved for summary judgment. (Dkt. No. 79). Plaintiff opposes the motion (Dkt. Nos. 81, 86) and defendant has filed a reply (Dkt. No. 87). Plaintiff's motion to change venue (Dkt. No. 83) and other miscellaneous motions (Dkt. Nos. 88-90) are also before the court.

I. <u>Motion to Change Venue</u>

        Plaintiff requests this court to transfer venue in this case to the United States District Court for the Central District of California. Defendant has not responded to the motion. A district court may transfer a civil action to any other district or division where it might have been brought "[f]or the convenience of parties and witnesses, and in the interest of justice." 28

1

U.S.C. §1404(a). Plaintiff's motion addresses only his own convenience to the extent that he recently moved to Los Angeles. This case was filed in 2006 and a motion for summary judgment which could be dispositive as to all of plaintiff's claims is pending. Under these circumstances, a change in venue would not serve the interests of justice and the motion will be denied.

II. <u>Motion for Summary Judgment</u>

Plaintiff proceeds on his first amended complaint against defendant Hall, the sole defendant. At all times relevant to this action, plaintiff was an inmate at California Correctional Center-Susanville ("CCC") and defendant was employed at CCC as a Correctional Officer. Plaintiff's first amended complaint states claims that (1) defendant retaliated against him in violation of the First Amendment; and (2) defendant subjected him to cruel and unusual punishment in violation of the Eighth Amendment.

Defendant asserts summary judgment on plaintiff's First Amendment claim is warranted because plaintiff failed to exhaust administrative remedies before filing suit, as required by 42 U.S.C. § 1997e(a). Defendant asserts summary judgment on plaintiff's Eighth Amendment claim is proper because defendant's conduct as alleged by plaintiff, even if true, did not constitute cruel and unusual punishment.

Summary judgment is appropriate when there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id.</u> Summary judgment should be entered, after

adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact exists. See Matsushita Elec. Indus. Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate (1) that the fact in contention is material, i.e., is a fact that might affect the outcome of the suit under the governing law (see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)), and (2) that the dispute is genuine, i.e., that the evidence is such that a reasonable jury could return a verdict for the nonmoving party (see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987)).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

1 committee's note on 1963 amendments).

2     In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd., 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

    The court "is not required to comb through the record to find some reason to deny a motion for summary judgment." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir. 2001). Instead the "party opposing summary judgment must direct the Court's attention to specific triable facts." S.Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003). Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. Barnes v. Independent Auto Dealers, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

    On March 24, 2008, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. On July 13, 2012, pursuant to the Ninth Circuit's decision in Woods v. Carey, 684 F.3d 934 (9th Cir. 2012), the court again advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure and granted him 21 additional days to file additional evidentiary materials regarding defendant's motion for summary judgment. (Dkt. No. 82.) See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999);

Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

The court notes that plaintiff's first amended complaint is verified under penalty of perjury. It therefore has the effect of an affidavit to oppose summary judgment "to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'" Keenan v. Hall, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996).

    A.    First Amendment Claim

With respect to the First Amendment Claim, plaintiff alleged as follows in his verified amended complaint. Defendant was plaintiff's supervisor in the Watch Commander's Office at CCC. (Dkt. No. 16 at 3.) On an unspecified date, defendant threatened plaintiff's life. Id. Plaintiff reported defendant's conduct. Id. Subsequently, defendant continued to harass plaintiff in the following four ways (1) "refused to transfer me or sign my job change slip in order to directly harrasse me further because he held a Grude [sic]"; (2) "stopping my [mail] subscriptions"; (3) "directly answering my 602's sent to the Mail room in enquirey about the situation [sic]"; and (4) "com[ing] to the Kitchen & directly interfere with me & the performance of my duties [sic]." Id. at 4.

To establish a First Amendment retaliation claim in the prison context, plaintiff must establish: (1) an adverse action against him; (2) because of; (3) his protected conduct, and that such action; (4) chilled his exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005).

As an initial matter, defendant asserts that plaintiff has failed to identify the retaliatory actions that defendant allegedly took. (Dkt. No. 79 at 19 (referring to "unidentified retaliatory behavior")). This argument is rejected as plaintiff alleged in his verified complaint that defendant harassed him in the four ways described above after plaintiff reported defendant's conduct of threatening plaintiff's life. Plaintiff alleged that defendant took these actions because of defendant's vindictive attitude and because defendant held a grudge. In the screening order of

5

May 29, 2007, this court found that plaintiff's allegations stated a retaliation claim under the First Amendment. (Dkt. No. 19.) Whether plaintiff has shown that a genuine issue for trial exists as to these alleged retaliatory acts is, of course, a different matter which will be addressed in turn.

First, however, defendant asserts that summary judgment is warranted because plaintiff failed to exhaust available administrative remedies as to this claim. For the reasons that follow, defendant carries his burden of demonstrating the non-exhaustion of administrative remedies with respect to some, but not all of the alleged retaliatory conduct of defendant.

The rule requiring a prisoner to exhaust administrative remedies states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in a jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Compliance with the exhaustion requirement is mandatory. Booth v. Churner, 532 U.S. 731, 739 (2001).

The State of California's prison regulations provide administrative procedures in the form of one informal and three formal levels of review to address plaintiff's claims. See Cal. Code Regs. tit. 15, §§ 3084.1-3084.7. Administrative procedures generally are exhausted once a prisoner has received a "Director's Level Decision," or third level review, with respect to his issues or claims. Cal. Code Regs. tit. 15, § 3084.5. All steps must be completed before a civil rights action is filed, unless there is an exception; exhaustion during the pendency of the litigation will not save an action from dismissal. McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002). In order to properly exhaust in compliance with the exhaustion requirement of section 1997e(a), a prisoner must comply with applicable procedural rules and time requirements. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

"The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures." Jones v. Bock, 549 U.S. 199, 218 (2007); see also McCollum v. CDCR, 647 F.3d 870, 876 (2011) ("Whether an inmate's

6

1  claim has been exhausted is determined by reference to the prison's own grievance requirements,

2  which necessitate that the inmate "describe the problem and the action requested." (internal

3  quotations and citations omitted).  In California,

> A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.

8  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009); see also McCollum, 647 F.3d at 876

9  ("While an inmate need not articulate a precise legal theory, a grievance must alert the prison to

10 the nature of the wrong for which redress is sought."); see also Jones, 549 U.S. at 219

11 ("[E]xhaustion is not per se inadequate simply because an individual later sued was not named in

12 the grievances.").

13        The following facts in relation to plaintiff's First Amendment claim are

14 undisputed or, upon review of the evidence submitted, have been deemed undisputed:

15        In early 2002, defendant was assigned as an Officer to CCC's Watch Office.

16 Defendant's Separate Statement of Undisputed Facts ("DUF") #2.  On February 6, 2002, plaintiff

17 was assigned to the Watch Office as an inmate clerk.  DUF #3.  On April 26, 2002, defendant

18 requested that plaintiff be removed from his position after which plaintiff was reassigned

19 elsewhere.  DUF # 8.

20        B. Swinney, Staff Service Analyst at CCC, searched the Inmate Appeals Tracking

21 System for institutional appeals accepted at the second level from plaintiff alleging that

22 defendant retaliated against plaintiff by interfering with his work assignment in the prison

23 kitchen, or by interfering with his receipt of mail in 2002.  DUF #21.  The Office of Appeals at

24 CCC has not accepted any appeals from plaintiff regarding interference by defendant with

25 plaintiff's kitchen work assignment or with plaintiff's mail.  DUF #27.  On November 25, 2002,

26 the CCC Appeals Office received Appeal Log No. 02-01462, in which plaintiff alleged that the

institution prevented him from receiving a Maxim magazine; plaintiff did not, however, pursue Appeal Log No. 02-01462 past the second level of review.  DUF #22, 26.

J. D. Lozano is the Chief of the Office of Appeals in Sacramento which receives all non-medical inmate appeals submitted to the third level.  DUF #24.  J.D. Lozano completed a search in the Inmate/Parolee Appeals Tracking system for accepted appeals which were submitted by plaintiff between January 1, 2002 and January 1, 2004, alleging that, during that time period, defendant retaliated against him by interfering with his work assignment in the prison kitchen, or by interfering with his receipt of mail, including Maxim magazines.  DUF #25.  Plaintiff has not submitted an appeal to the Third Level pertaining to allegations that defendant interfered with his work assignment in the prison kitchen or with his receipt of mail including Maxim magazines.  DUF #26.

On April 25, 2002, plaintiff submitted Appeal Log No. 02-00596 to the Office of Appeals in Sacramento, in which plaintiff alleged that defendant verbally abused him on numerous occasions and interfered with his attempts to be unassigned from the Watch Office Clerk position.  DUF #32.  Plaintiff's Appeal Log No. 02-00596 was denied at the Third Level on October 29, 2002, therefore the allegations contained therein have been properly exhausted.  DUF #32.

Defendant did not participate in the review of or the response to any of plaintiff's administrative appeals discussed herein.  DUF #14, 16.

Based on the facts determined to be undisputed, to the extent plaintiff's First Amendment retaliation claim is premised on defendant's alleged conduct of interfering with plaintiff's mail or the performance of plaintiff's duties at his kitchen job, plaintiff failed to exhaust administrative remedies.  Plaintiff asserts there was no need to exhaust because the appeal would "not change anything or nothing will be done about it." (Dkt. No. 86 at 14.)  He is incorrect; exhaustion was required.  Booth, 532 U.S. at 741 (holding that prisoners must exhaust their administrative remedies regardless of the relief they seek, i.e., whether injunctive relief or

money damages, even though the latter is unavailable pursuant to the administrative grievance process). Defendant has carried his burden of demonstrating that plaintiff failed to exhaust available administrative remedies as to defendant's alleged conduct of interfering with plaintiff's mail or with plaintiff's duties in the kitchen. The proper remedy as to the unexhausted portion of the First Amendment claim is dismissal without prejudice. Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003).

In addition, summary judgment is warranted as to defendant's alleged conduct of directly responding to plaintiff's grievances sent to the mail room. Plaintiff fails to raise a genuine dispute of fact to counter defendant's evidence that defendant had no involvement with the review of, or response to plaintiff's Appeal Log No. 02-01462 and that no other appeal was received regarding plaintiff's mail or the confiscation of plaintiff's Maxim magazine. Plaintiff asserts that he submitted another, unidentified grievance regarding his allegations about the Maxim Magazine, to which defendant responded. (Dkt. 86 at 5.) Plaintiff submits no evidence to dispute Swinney's contrary declaration, however, and his unsupported allegation is insufficient to prevent the entry of summary judgment in defendant's favor as to this alleged retaliatory conduct. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.11 (1986) (discussing the requirements of Rule 56(e)).

This leaves only plaintiff's allegation that, after he reported defendant's verbal threats, defendant harassed him by refusing to transfer him or sign his job change slip because defendant held a grudge. It is undisputed that plaintiff properly exhausted his administrative remedies as to defendant's alleged conduct of verbally harassing plaintiff and interfering with plaintiff's attempts to be unassigned from the Watch Office Clerk position. Plaintiff was not required to label defendant's conduct "retaliation" in order to properly exhaust. See McCollum, 647 F.3d at 876. If true, such conduct would constitute "adverse action" in the retaliation context. See Rhodes, 408 F.3d at 567. Moreover, the allegations in plaintiff's verified complaint suffice to show a disputed issue of material fact as to whether plaintiff's First Amendment rights

1  were "chilled" by the alleged adverse action.  See Id. at 568-69 (inmate's First Amendment rights
2  were "chilled" even though inmate was able to file grievances and a lawsuit).
3         Defendant argues that plaintiff has failed to identify the "protected conduct" he
4  engaged in which was the motivating factor for defendant's retaliatory conduct. (Dkt. No. 79 at
5  19.) Plaintiff alleged in his verified complaint that he reported defendant's conduct of
6  threatening plaintiff's life, after which defendant harassed him by refusing to transfer him or sign
7  his job change slip. (Dkt. No. 1 at 4.)  The filing of a prison grievance is constitutionally
8  protected conduct.  Rhodes, 408 F.3d at 567–68.  As set forth, it is undisputed that plaintiff's
9  grievance designated Appeal Log # 02-00596 complains that defendant verbally harassed
10 plaintiff and threatened plaintiff's life.  Plaintiff submitted this grievance to the informal level of
11 review on April 25, 2002.  It is also undisputed, however, that on the very next day, April 26,
12 2002, defendant requested that plaintiff be removed from his position in the Watch Office and
13 plaintiff was reassigned.  To any extent defendant took actions prior to April 26, 2002 to interfere
14 with plaintiff's own attempts to be reassigned, defendant is correct that plaintiff has alleged no
15 protected conduct which could have been the motivating factor for that retaliatory conduct.[1]
16        Since plaintiff has failed to identify any protected conduct that occurred *prior to*
17 defendant's alleged retaliatory action of interfering with plaintiff's attempts to be reassigned
18 from the Watch Office, he has also failed to show any evidence of retaliatory motive on
19 defendant's part.  See Bruce v. Ylst, 351 F.3d 1283, 1288–89 (9th Cir. 2003) (holding that
20 retaliatory motive may be shown by the timing of the alleged retaliatory act and inconsistency
21 with previous actions, as well as direct evidence).  For all these reasons, summary judgment
22 should be entered in defendant's favor as to the portion of plaintiff's First Amendment retaliation

---

[1] Plaintiff also filed Appeal Log No. 02-01462 as discussed herein. However, that grievance does not mention defendant and, more importantly, was submitted to the first informal level of review on November 14, 2002, long after defendant requested that plaintiff be removed from his position in the Watch Office on April 26, 2002. (Appendix to Dkt. No. 79, Hall decl., Ex. F; DUF # 19.) Appeal Log 02-01462 therefore could not have motivated defendant to interfere with plaintiff's attempts to be reassigned from the Watch Office.

1  claim that is not dismissed for his failure to exhaust available administrative remedies.

2            B.      <u>Eighth Amendment Claim</u>

3  Plaintiff alleged as follows in his verified amended complaint: on an unspecified
4  date, defendant stated to plaintiff "Don't make me kill you Ferguson." (Dkt. No. 16 at 3.) Then
5  he pointed his finger at plaintiff and said "I'll kill you too." <u>Id.</u>  Later, when plaintiff was talking
6  to the Sergeant, defendant burst into the office "in a rage" and "demanded in a very loud angry
7  manner" for plaintiff to "shut up immediately or something very bad" would happen to him. <u>Id.</u>
8  at 4. Defendant yelled at plaintiff, "you better get up and walk out of this office right now- while
9  you still can." <u>Id.</u> Plaintiff then left the room. <u>Id.</u> For screening purposes, this court found that
10 plaintiff's allegations stated a claim for an Eighth Amendment violation. (Dkt. No. 19.)

11 Defendant denies that he ever threatened to harm or kill plaintiff. DUF #10.
12 Accordingly, there is a dispute of fact in this regard. However, for the reasons that follow, the
13 dispute is not material.

14 "[T]he unnecessary and wanton infliction of pain ... constitutes cruel and unusual
15 punishment forbidden by the Eighth Amendment." <u>Whitely v. Albers</u>, 475 U.S. 312, 319 (1986).
16 There is, however, "a *de minimus* level of imposition with which the Constitution is not
17 concerned." <u>Ingraham v. Wright</u>, 430 U.S. 651, 674 (1977). For example, the Eighth
18 Amendment's prohibition does not extend to "de minimis uses of physical force, provided that
19 the use of force is not of a sort repugnant to the conscience of mankind." <u>Wilkins v. Gaddy</u>, 130
20 S.Ct. 1175, 1178 (2010) (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 9, (1992) (internal
21 quotations omitted)).

22 Likewise, "verbal harassment or abuse . . . is not sufficient to state a constitutional
23 deprivation under 42 U.S. § 1983." <u>Oltarzewski v..Ruggiero</u>, 830 F.2d 136, 139 (9th Cir. 1987)
24 (quoting <u>Collins v. Cundy</u>, 603 F.2d 825 (10th Cir. 1979) (idle threat to hang prisoner did not
25 state a claim under section 1983)); <u>McBride v. Deer</u>, 240 F.3d 1287, 1291 (10th Cir. 2001)
26 ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and

verbal taunts do not violate the Eighth Amendment."); Hopson v. Fredericksen, 961 F.2d 1374, 1378 (8th Cir. 1992) ("Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim." (citing McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983), cert. denied 64 U.S. 998 (1983) ("mere threatening language and gestures... do not, even if true, amount to constitutional violations.")).

In sum, a "mere naked threat" of bodily harm does not state a claim under the Eighth Amendment. See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) ("it trivializes the eighth amendment to believe a threat constitutes a constitutional wrong."). Here, as plaintiff has alleged only "mere naked threats," there is no material issue for trial on the Eighth Amendment claim. Summary judgment in defendant's favor is warranted.

III. Other Miscellaneous Motions

Plaintiff has filed a "Request for Pitchess Motion on defendant..." (Dkt. No. 88), a "Motion for Use of Expert Witness and for Jury Trial" (Dkt. No. 89), and a "Motion for assistance in locating pertinent witnesses..." (Dkt. No. 90). In light of the recommendation that a portion of defendant's First Amendment claim be dismissed and that defendant's motion for summary judgment be granted in all other respects, these motions are denied at this time.

In accordance with the above, IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion to change venue (Dkt. No. 83) is DENIED;

2. Plaintiff's request for Pitchess motion (Dkt. No. 88) is DENIED;

3. Plaintiff's motion for use of expert witness and for jury trial (Dkt. No. 89) is DENIED; and

4. Plaintiff's motion for assistance in locating pertinent witnesses (Dkt. No. 90) is DENIED.

Further, IT IS HEREBY RECOMMENDED THAT:

1. Plaintiff's First Amendment claim be DISMISSED without prejudice for failure to exhaust administrative remedies to the extent that the claim is premised on defendant's

12

alleged conduct of interfering with plaintiff's mail and interfering with plaintiff's kitchen duties;

    2. Defendant's motion for summary judgment (Dkt. No. 79) be GRANTED as to the remaining portion of plaintiff's First Amendment claim and as to his Eighth Amendment Claim; and

    3. The clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 30, 2012

_/s/ Carolyn K. Delaney_
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8
ferg1301.57.MSJ